UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TYREEK DAVIS, on behalf of N. BROWN, S. BROWN,  :
I. DAVIS and A. DAVIS,                                   :
                                                   :
               Plaintiff,                      :
                                                   :
      - against -                      :          __OPINION AND ORDER__
                                                 :          12-CV-6422 (ER)
CHINI BALDWIN (in her official and individual capacity  :
as Caseworker), AMANDA E. WHITE (in her individual  :
and official capacity as Justice of the Superior Court of  :
Kings County), JOHN MATTINGLY (in his individual  :
and official capacity as Commissioner of ACS),       :
                                                   :
               Defendants.               :
------------------------------------------------------------------------x

Ramos, D.J.:

      Plaintiff Tyreek Davis ("Plaintiff"), appearing *pro se*, brings this civil rights action

pursuant to 42 U.S.C. § 1983 against Defendants Chini Baldwin ("Baldwin") and John Mattingly

("Mattingly") (collectively, "Defendants"),[1] alleging violations of his Fourth, Ninth and

Fourteenth Amendment rights.  Complaint ("Compl.") (Doc. 1.)  The Court previously deemed

this case as related to another action initiated by Plaintiff and his wife, *Tasha O. Licorish-Davis,

et al. v. Dr. Millicent Mitchell, et al.*, 12 Civ. 601 (the "Related Case"), which the Court

dismissed on May 20, 2013 ("May 20, 2013 Opinion and Order").

      Currently pending before the Court is Defendants' motion to dismiss the instant action

for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), as well as for failure

to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 23.  For the reasons set forth below,

Defendants' motion to dismiss is GRANTED.

---

[1] On October 3, 2012, the Court dismissed Judge Amanda E. White from this action under the doctrine of absolute judicial immunity.  Doc. 9.

## I.   <u>Factual Background</u>

As the factual background of the instant action and the Related Case are substantially similar, the parties' familiarity with the facts—which are set forth in this Court's May 20, 2013 Opinion and Order—is presumed.  The Court has set forth below only those facts alleged by Plaintiff in support of the instant action that were not set forth in the prior Opinion.

Plaintiff alleges that after his daughter, Aaliyah's, admission to the hospital following a "scald accident," a case was initiated by the New York City Administration for Children's Services ("ACS") against his wife, Tasha Licorish-Davis, in June 2011, pursuant to which Aaliyah was removed from the custody of Ms. Licorish-Davis, remanded to the custody of ACS, and placed in foster care.  Compl. at III; *see also* Declaration of Jeffrey S. Dantowitz ("Dantowitz Decl.") (Doc. 24), Ex. A (June 13, 2011 Order of Removal).[2]  Plaintiff claims that he was never served or subpoenaed by the Family Court, as it did not have his correct address. Compl. at III.  As Plaintiff explained to Defendant Baldwin, Plaintiff never resided at Ms. Licorish-Davis's mother's apartment in Brooklyn, where the accident occurred, as he was "abiding by a two year order [of protection]," which expired on July 28, 2012.  *Id.*; *see also* Dantowitz Decl., Ex. B (July 28, 2010 Order of Protection).  Plaintiff claims that he was not given any notice of the pendency of the Family Court action, nor did he consent to personal jurisdiction in the Family Court.  Compl. at III.  He alleges that this "defective service has affected all [his] children . . . forcing them illegally into the custody of the City of N.Y."  *Id.* Plaintiff further claims that Defendant Baldwin defamed his character in court in order to have his children removed from his wife's custody, as well as "unlawfully" added Plaintiff's name to

---

[2] As discussed *infra*, on a Rule 12(b)(1) motion, the court may consider documents outside the pleadings.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  Accordingly, in addition to the allegations in the Complaint, the Court considers, to the extent relevant, the documents submitted by both parties in determining whether this Court has subject matter jurisdiction over Plaintiff's action.

the Family Court petition in order to prevent him from gaining custody of Aaliyah, who was not included in the 2010 Order of Protection.  *Id.*  Plaintiff alleges that Baldwin "lied about [Plaintiff's] address [in order] to have [his] name improperly added to the petition in family court."  *Id.*  Plaintiff claims that he has never appeared in Family Court, was never served with process, and was not aware of the court action.  *Id.*

On August 4, 2011, the Family Court issued an *Ex Parte* Temporary Order of Protection against Plaintiff, directing him not to interfere with the care and custody of his children. Dantowitz Decl., Ex. C.  Plaintiff alleges that he was first informed of the Order of Protection on September 30, 2011, Compl. at III, but that he was never served with the Order.  *Id.*  Thereafter, on November 21, 2011, the Family Court issued another Temporary Order of Protection against Plaintiff.  Dantowitz Decl., Ex. D.  The Order indicates that Plaintiff was "present in Court" on the date of its issuance.  *Id.*

Plaintiff claims that his family "has been sabotaged and conspired against" by the Defendants, "who placed restraining orders [against him] without [him] being present in court and without [his] knowledge."  Compl. at III.

## II.   Legal Standard on a Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits,

may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co.*, 215 F.3d at 253; *see also Morrison*, 547 F.3d at 170.  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first. *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

## III.   Plaintiff's Claims are Barred by the Rooker-Feldman Doctrine

Defendants argue that Plaintiff's action is an impermissible collateral attack of a state Family Court Order, and is therefore barred by the *Rooker-Feldman* doctrine.[3]

The *Rooker-Feldman* doctrine stands for the principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  The doctrine precludes cases brought in lower federal courts "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  In interpreting the Supreme Court's *Exxon Mobil* decision, the Second Circuit has held that there are four requirements for the application of *Rooker-Feldman*:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court

---

[3] The Second Circuit has held that "[a] challenge under the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction." *Moccio v. N.Y. State Office of Ct. Admin.*, 95 F.3d 195, 198 (2d Cir. 1996).

> review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (brackets, quotation marks and citations omitted).  The first and fourth requirements "may be loosely termed procedural," while the second and third "may be termed substantive."  *Id.*

### a.  Procedural Requirements

As indicated, the *Rooker–Feldman* doctrine contains two procedural requirements:  the federal court plaintiff must have lost in state court and the state court judgment must have been rendered before the district court proceedings commenced.  The Court finds that the procedural requirements are met in this case.  First, Plaintiff "lost" in state court when the Family Court issued the Order of Removal placing Aaliyah in the custody of ACS and the Orders of Protection precluding Plaintiff from interfering with the care and custody of his children.  *See J.R. ex rel. Blanchard v. City of New York*, No. 11 Civ. 841 (SLT) (MDG), 2012 WL 5932816, at *4-*5 (E.D.N.Y. Nov. 27, 2012) (holding that the plaintiff "lost" in state court when the family court issued an order of disposition temporarily remanding custody of plaintiff's child to ACS); *Allen v. Mattingly*, No. 10 Civ. 0667 (SJF) (ARL), 2011 WL 1261103, at *8 (E.D.N.Y. Mar. 29, 2011) (holding that plaintiff "lost" in state court pursuant to both temporary and final orders of the family court removing plaintiff's son from her custody and placing him in foster care), *aff'd*, 479 F. App'x 712 (2d Cir. 2012); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705-06 (S.D.N.Y. 2011) (holding that plaintiff "lost" in state court when the court issued a protective order against her); *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 713 (S.D.N.Y. 2006) (holding that plaintiffs "lost in state court" when the Family Court signed the

temporary order of removal granting remand of plaintiffs' child to ACS pending further proceedings); *cf. Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) (holding that plaintiff was not a "state court loser" for *Rooker-Feldman* purposes where temporary order of removal was vacated four days after it was issued and plaintiff's child was returned to her); *see also* Dantowitz Decl., Ex. A (noting that appeal of June 13, 2011 Order of Removal allowed as of right under Section 113 of the New York Family Court Act).

　　With respect to the fourth requirement, the Order of Removal—dated June 13, 2011— and Orders of Protection—dated August 4, November 21, and December 5, 2011—were issued before this action was commenced on August 1, 2012.  Plaintiff indicates in his opposition papers that he has "appealed every order since *August 10, 2012*," Doc. 28 at 2 (emphasis added), and attaches as exhibits two Requests for Appellate Division Intervention, dated August 15, 2012 and March 15, 2013.  Doc. 29 at 36-37.  It is unclear whether those requests for appellate intervention refer to the Orders at issue in this action, as the Orders about which Plaintiff complains in this litigation were issued in *2011*—months before August 10, 2012.  The August 10, 2012 Order to which Plaintiff refers in his opposition papers presumably relates to a separate incident that occurred after the filing of this action, in which police officers allegedly entered Plaintiff's hotel room and "executed an arrest warrant for [his] newborn."[4]  Doc. 28 at 2. Moreover, even assuming those appeals refer to the Family Court Orders at issue in this case, Plaintiff has not provided this Court with any indication of the status of the appeals, including whether they have been resolved and, if so, how.

　　Defendants suggest that assuming such appeals relate to the Orders at issue in this case and are still pending, the *Rooker-Feldman* doctrine would not operate to preclude Plaintiff's

---

[4] Plaintiff indicates in his submissions to this Court that he has filed a *separate* action in federal court regarding the August 10, 2012 incident against the New York City Police Department.  Doc. 19 at 2.

instant action and, instead, argue in the alternative that the Court nevertheless lacks subject matter jurisdiction under the *Younger* abstention doctrine.  *See* Reply Mem. L. (Doc. 30) at 3. Defendants' assumption that the *Rooker-Feldman* doctrine would not apply to Plaintiff's action if his appeals were still pending is presumably based on the body of case law holding that the doctrine is inapplicable unless all state proceedings—including appeals—have ended before the federal action commences.  *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346 (E.D.N.Y. 2010) (citing, *inter alia*, *Council v. Better Homes Depot, Inc.*, No. 04 Civ. 5620 (NGG) (KAM), 2006 WL 2376381, at *8 (E.D.N.Y. Aug. 16, 2006) ("Therefore, the state court proceeding ends for *Rooker-Feldman* purposes after a plaintiff allows the time for appeal to lapse without filing an appeal in state court."); *Phillips ex rel. Green*, 453 F. Supp. 2d at 714-15 (same))).  However, courts have split as to whether the *Rooker-Feldman* doctrine applies to bar actions where the federal court plaintiff has an appeal pending in state court.  *Id.* Some courts require exhaustion of state-court appeals, citing language in the Supreme Court's decision in *Exxon Mobil* stating that *Rooker-Feldman* applies only when "the losing party in state court filed suit in federal court *after the state proceedings ended* . . . . ."  *Id.* at 347 (citing cases and quoting *Exxon Mobil Corp.*, 544 U.S. at 291) (emphasis added)).  Under the reasoning of these cases, state proceedings have not "ended" if state court appeals are still pending.  *Id.*

Other courts, including several courts within this District, have applied *Rooker-Feldman* as long as the federal action seeks review of a previous state court judgment, *regardless* of whether that judgment is being appealed in the state courts when the federal case begins.[5]  *Id.* (citing *Schuh v. Druckman & Sinel, L.L.P.*, No. 07 Civ. 366 (LAK) (GWG), 2008 WL 542504, at

---

[5] Although the Second Circuit has not directly addressed the issue, a summary order in *Swiatkowski v. New York*, 160 F. App'x 30 (2d Cir. 2005), suggests that the doctrine does apply to bar federal suits brought while a state court appeal is pending.  *Id.* (upholding district court's determination that *Rooker–Feldman* barred the suit where appeal "remained pending" at the time the plaintiffs removed the suit from state court).

*5 (S.D.N.Y.  Feb. 29, 2008) ("That the [plaintiffs] are still in the process of appealing the state

court decision is irrelevant to the *Rooker-Feldman* analysis."); *Lomnicki v. Cardinal McCloskey

Servs.*, No. 04 Civ. 4548 (KMK), 2007 WL 2176059, at *6 n.11 (S.D.N.Y. July 26, 2007);

*Melnitzky v. HSBC Bank USA*, 06 Civ. 13526 (JGK), 2007 WL 1159639, at *8 n.6 (S.D.N.Y.

Apr. 17, 2007); *Bush v. Danziger*, No. 06 Civ. 5529 (PKC), 2006 WL 3019572, at *6 (S.D.N.Y.

Oct. 23, 2006))).  These courts reason that despite *Exxon Mobil*'s use of the phrase "after the

state proceedings ended," that decision makes clear that *Rooker-Feldman* prevents federal

district courts from "review[ing] and revers[ing] unfavorable state-court *judgments*."  *Id.* (citing

*Exxon Mobil*, 544 U.S. at 283) (emphasis added)).  This purpose would therefore be undermined

if the doctrine is held to be inapplicable where a litigant seeks state appellate review of a state-

court judgment while concurrently seeking federal district court review of that same judgment.

*Id.* at 348.

    This Court finds the latter approach more persuasive.  Regardless of the status of any

state court appeals, plaintiff is still seeking federal review of a state-court judgment, and that is

what *Rooker-Feldman* prohibits.  *Id.* (citing *Exxon Mobil Corp.*, 544 U.S. at 283) (explaining

that *Rooker-Feldman* prevents "federal courts of first instance [from] review[ing] and revers[ing]

unfavorable state-court judgments")).  Thus, even assuming Plaintiff's appeals are currently

pending before the Appellate Division, to the extent Plaintiff challenges the Orders of the Family

Court, his claims relate to a state-court judgment "rendered before the district court proceedings

commenced."[6]

---

[6] Even if the Court were to hold that the purported pendency of Plaintiff's appeals precluded the application of the *Rooker-Feldman* doctrine, the Court would nevertheless abstain from involving itself in Plaintiff's pending state judicial proceeding pursuant to the *Younger* abstention doctrine.  The *Younger* abstention doctrine requires federal courts to abstain from jurisdiction in the "interests of comity and federalism . . . whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests."  *Hawaii Housing*

### b.  Substantive Requirements

Even if the procedural requirements of the *Rooker–Feldman* doctrine have been satisfied,

Plaintiff may nonetheless pursue his claims against Defendants if the substantive requirements

are not also met.  The two substantive requirements that must be satisfied for the *Rooker-*

*Feldman* doctrine to apply are:  (1) the plaintiff must complain of injuries caused by the state-

court judgment, and (2) the plaintiff must invite district court review and rejection of that

judgment.  The Second Circuit has summarized these two requirements as follows:  "federal

plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by

a state judgment."  *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007) (quoting *Hoblock*, 422

F.3d at 87) (emphasis in original)); *id.* at 98 ("[A] party is not complaining of an injury 'caused

by' a state-court judgment when the exact injury of which the party complains in federal court

existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those

proceedings.") (emphasis in original).  Accordingly, the doctrine does not bar plaintiffs from

raising federal claims based on the same facts as a prior state case, although such claims might

be barred under *res judicata*, so long as the plaintiff complains of an injury *independent of* an

adverse state court decision; rather, the doctrine precludes claims brought in federal court where

the state decision is *itself* the source of the injury complained of.  *Mareno v. Dime Sav. Bank of*

*New York*, 421 F. Supp. 2d 722, 726 (S.D.N.Y. 2006).

---

*Auth. v. Midkiff*, 467 U.S. 229, 237-38 (1984).  The Second Circuit has held that a federal court should abstain from interfering with pending state litigation when:  (1) a state proceeding is ongoing; (2) an important state interest is implicated; and (3) the plaintiff has an open avenue for review in the state courts of his constitutional claims. *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995).  The state court proceedings from which Plaintiff's claims stem involve family relations and the custody of children, which are important state interests.  *See Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (citing *Phifer v. City of New York*, No. 99 Civ. 4422, 1999 WL 722013, at *1 (S.D.N.Y. Sept. 16, 1999)).  Although Plaintiff brings federal civil rights claims in this proceeding, he asserts no reason why he could not raise those claims in Family Court or on appeal.  *Id.*  Accordingly, assuming *arguendo* that *Rooker-Feldman* did not bar Plaintiff's instant action, the *Younger* abstention doctrine requires that this Court abstain from adjudicating Plaintiff's claims, which can be raised in the context of the pending proceedings in the New York State court system.

Here, Plaintiff alleges that the "basis of [his] suit/complaint" is Defendants' failure to serve him with the petition filed in Family Court alleging that Aaliyah was neglected and abused, and seeking the temporary removal of Aaliyah from Plaintiff's and his wife's custody. Compl. at III. In his prayer for relief, Plaintiff asks that this Court grant him "relief [from] all orders made in violation of the law," and that "due process of the law be allowed." Compl. at V. The Court finds that the substantive requirements of the *Rooker-Feldman* doctrine are satisfied here, as Plaintiff clearly complains of injuries caused by the Family Court Orders, and invites this Court to review and reject those Orders.[7] Plaintiff argues that he was not properly served with notice of the Family Court proceedings and that the Family Court Orders therefore violated his procedural due process rights.[8] The relief he seeks in this case would effectively reverse the

---

[7] To the extent that Plaintiff seeks damages for his § 1983 due process claim—as he contends in his opposition papers—that claim is nevertheless barred by *Rooker-Feldman*, as a plaintiff "cannot avoid dismissal of the complaint [pursuant to the *Rooker-Feldman* doctrine] by suggesting civil rights violations." *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 366 (E.D.N.Y. 2010) (citation omitted); *accord Bernstein v. New York*, No. 06 Civ. 5681 (SAS), 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9, 2007) (where plaintiff attempted to avoid the application of *Rooker-Feldman* by "present[ing] his claim as independent from his appeal of the state court . . . order by stating that he . . . was denied due process in the course of, and not *as a result of*, the judicial proceedings that led to the state court judgment," holding that the *Rooker-Feldman* doctrine nevertheless barred plaintiff's claim because "[i]f th[e] Court were to declare that [plaintiff] was denied due process during the state court proceedings, it would effectively be reversing a judgment of the state court") (emphasis in original); *Wu v. Levine*, No. 05 Civ. 1234 (NG), 2005 WL 2340722, at *2 (E.D.N.Y. June 7, 2005) (holding that where "plaintiff's claims of constitutional and civil rights violations arise from the state court proceedings," plaintiff "cannot circumvent the *Rooker-Feldman* doctrine by recasting her claims as a federal civil rights violation"), *aff'd*, 314 F. App'x 376 (2d Cir. 2009).

[8] With respect to Plaintiff's Fourth Amendment claim, the Court assumes that it relates to Defendants causing Aaliyah to be placed in the custody of ACS, although Plaintiff does not set forth the factual basis for the claim in the Complaint. This claim is barred for the same reason that Plaintiff's due process claim is barred; that is, it directly arises from the Family Court's determination regarding Aaliyah's custody and is therefore precluded by the *Rooker-Feldman* doctrine. Moreover, even assuming the Court had jurisdiction over Plaintiff's Fourth Amendment claim, the Second Circuit has held that in the context of a seizure of a child by a state actor during an abuse investigation, "a court order is the equivalent of a warrant." *Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999). The Family Court issued an Order removing Aaliyah from Plaintiff's custody on June 13, 2011. In carrying out that Order, Defendants were acting under the equivalent of a warrant, and Plaintiff's Fourth Amendment claim therefore fails for that independent reason. With respect to Plaintiff's Ninth Amendment claim, case law is clear that the Ninth Amendment does not independently secure any constitutional rights which may support a § 1983 claim. Accordingly, Plaintiff's Ninth Amendment claim must also be dismissed. *Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir. 2011) (holding that the Ninth Amendment does not provide "an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases") (citation omitted), *cert. denied*, 132 S. Ct.

state court's judgment placing Aaliyah in the custody of ACS.  *See Morris v. Sheldon J. Rosen, P.C.*, No. 11 Civ. 3556 (JG) (LB), 2012 WL 2564405, at *4-*5 (E.D.N.Y. July 2, 2012) (where plaintiff argued that she was not properly served with notice of holdover proceeding, holding that *Rooker–Feldman* "bars [plaintiff] from claiming that the state court [default] judgment violated her right to due process"); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 365 (E.D.N.Y. 2010) (holding that plaintiff's action was barred by *Rooker-Feldman* where "a finding by this Court that Defendants' conduct violated Plaintiffs' due process rights would necessarily involve a review of the state court's determination that . . . no notice was required before the [order] could be issued and/or . . . the notice given to Plaintiffs by Defendants . . . was constitutionally sufficient"); *Edem v. Spitzer*, No. 05 Civ. 3504 (RJD), 2005 WL 1971024, at *1 (E.D.N.Y. Aug. 15, 2005) (holding that plaintiff's claim that he was denied due process because he was not given "adequate notice and an opportunity to be heard prior to the deprivation of his property rights" is "inextricably intertwined with the state court's determinations and could have been raised in state court, either in the Family Court or on appeal," and is therefore barred by the *Rooker-Feldman* doctrine), *aff'd*, 204 F. App'x 95 (2d Cir. 2006); *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355-56 (E.D.N.Y. 2004) (holding that due process and equal protection claims were inextricably intertwined with the Family Court's determinations regarding child support and could have been raised in state court, either in the Family Court or on appeal).  Because the substantive requirements are satisfied here, this Court lacks subject matter jurisdiction over Plaintiff's action under the *Rooker-Feldman* doctrine.[9]

---

248 (2011); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) ("[T]he Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees.").

[9] That Plaintiff did not raise or adjudicate before the Family Court or on appeal the issues and claims he asserts in the instant case does not preclude application of the *Rooker-Feldman* doctrine.  *Glatzer v. Barone*, 614 F. Supp. 2d

**IV.**   <u>**Plaintiff's Petition for Habeas Corpus is Denied**</u>

On May 21, 2013, Plaintiff filed with this Court a Petition for Habeas Corpus ("Petition")
requesting that his children "be produced based on their unlawful detainment in the illegal
custody of ACS." Doc. 26. Defendants submitted a letter, dated June 5, 2013, opposing
Plaintiffs' Petition on several different grounds. Doc. 27.

This Court may "entertain an application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court only on the ground that he is in custody in
violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In
*Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 510-12 (1982), the Supreme
Court held that children in foster care, like Plaintiff's children, are not in the "custody" of the
state within the meaning of § 2254(a). Rather, "[t]hey are in the 'custody' of their foster parents
in essentially the same way, and to the same extent, other children are in the custody of their
natural or adoptive parents." *Id.* at 510. The Court explained that the "custody" of foster parents
over a child is not the type of custody that traditionally has been challenged through federal
habeas. *Id.* Accordingly, because Plaintiff's children are not in state "custody" within the
meaning of § 2254, this Court does not have jurisdiction to review by means of a habeas

---

450, 465 (S.D.N.Y. 2009) (citing *Hoblock*, 422 F.3d at 86) (holding that "[j]ust presenting in federal court a legal
theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman*"), *aff'd*, 394 F.
App'x 763 (2d Cir. 2010). Moreover, to the extent that Plaintiff argues that he was unable to raise the issue in the
state court proceedings because he was not present at the relevant hearings, the Court notes that the November 21,
2011 Temporary Order of Protection clearly states that Plaintiff was present at the hearing on the Order. *See*
Dantowitz Decl., Ex. D. In his opposition papers, Plaintiff makes inflammatory and unsubstantiated accusations that
counsel for Defendants altered the November 21, 2011 Order to make it appear as though Plaintiff was present at the
hearing. *See* Doc. 28 at 2-3. In support of this theory, Plaintiff includes a copy of a December 5, 2011 Temporary
Order of Protection, *see* Doc. 29 at Ex. B, and contends that the handwriting on the top left portion of the December
Order does not match the handwriting on the November Order. Accordingly, Plaintiff concludes that Defendants'
counsel "doctored" the November Order to make it appear that Plaintiff was present at the hearing when, in reality,
he was not. That the handwriting on the two separate Orders does not match —presumably written by two different
employees within the Clerk's office—is clearly not indicative of fraud or bad faith on the part of Defendants'
counsel. Notably, Plaintiff has failed to provide the Court with a copy of the allegedly un-altered, original
November 21, 2011 Order. Moreover, even assuming Plaintiff was not present at any of the Family Court hearings,
Plaintiff could have raised his due process argument on appeal.

application the state court's custody determinations. *See Middleton v. Attorneys Gen. of States of N.Y., Penn.*, 396 F.3d 207, 209 (2d Cir. 2005) (holding that federal courts do not have jurisdiction to review by means of a habeas application a state court's child-custody determination). Accordingly, Plaintiff's Petition is DENIED.

## V.   Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.[10]

Additionally, Plaintiff's Petition for Habeas Corpus is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 23, and close this case.[11]

It is SO ORDERED.

Dated:     December 31, 2013
           New York, New York

                                        Edgardo Ramos, U.S.D.J.

---

[10] To the extent that Plaintiff raises a malicious prosecution claim against Defendants, that claim must also fail, as the Family Court proceedings clearly did not terminate in Plaintiff's favor. *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996).

[11] The Court remains cognizant that *pro se* litigants should be given leave to amend a complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). However, as Plaintiff's claims stem directly from the state court judgment, and are therefore barred by the *Rooker-Feldman* doctrine, the Court finds that there is no "reason to believe that [Plaintiff] may be able to articulate a viable set of allegations" to support his claims, and that his claims, "however pled, are fatally flawed." *Santos v. Gen. Elec. Co.*, No. 10 Civ. 6948 (JSR) (MHD), 2011 WL 5563544, at *12 (S.D.N.Y. Sept. 28, 2011) (Report & Recommendation), *adopted* 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011).